States v. Kareem Swinton. All right. Whenever you're ready. All right. Thank you. Good morning, Your Honors. May it please the court. My name is Sarah Kuntzler, and I am counsel for Kareem Swinton. On August 3rd, 2022, a jury found my client guilty of two counts. One, a conspiracy to possess with intent to distribute one or more controlled substances, and two, intentional distribution of a controlled substance on December 8th, 2018. With respect to count one, the jury found no quantity of heroin and no quantity of fentanyl and less than 500 grams of powder cocaine and a detectable amount of crack cocaine. No witnesses testified about Mr. Swinton's involvement in a conspiracy or substance sale involving any quantity of powder or crack cocaine. The government did not observe Mr. Swinton selling drugs. The government made no controlled buys of controlled drugs from Mr. Swinton. No drugs were found on Mr. Swinton, and no drugs were seized from his residence. Your Honors, this case is about the lion's share of the evidence presented against my client, which came in the form of intercepted communications containing hearsay statements by alleged co-conspirators. And these calls, which form the heart of the government's case, form the basis of my argument today. Now, with respect to the admission of the calls in the first instance, Rule 801 requires, and we do allow, that the statement must be considered when determining its own admission, but that it does not by itself establish the admissibility of that statement. Now, this Court has recognized that these statements by alleged co-conspirators are presumptively unreliable, and that's why they can't form the basis of their own admission. Therefore, the Court was required in this case to look beyond those statements to independent evidence that Mr. Swinton was a member of a conspiracy, and that, in this case, was particularly important, given the lack of other evidence that I've already mentioned. Can you – one of the things that made it hard for me to grab these arguments is that you challenge the admission of the hearsay statements as a whole, right, of co-conspirators. And, you know, when I look back through these transcripts, there are so many statements that may be incriminated, but wouldn't be hearsay. They're not being offered for the truth of the matter asserted. They may be offered to show the subject matter of the conversation. They're talking about drugs. But they aren't offered to show the stuff you sold me is good. They're not offered to show that, in fact, the stuff that you sold me is good. They're offered to show you're talking about drugs. See what I'm saying? So can you give me, like, the three most concerning hearsay statements that came in under the co-conspirator exception that we should focus on in trying to figure out whether or not it was proper to admit them? Well, I'll start out by saying that if these statements were admitted for a non-hearsay purpose, there should have been a limiting instruction by the court acknowledging they were admitted for that purpose. Here, there was not. So they all came in, you know, for their truth, which is dangerous in a case like this one. You know, in terms of specific objections, you're right. No specific objections were made at the trial level to specific calls here. It was only to categories of calls. And it was the objections to categories of calls that was preserved, right, the three different categories that were identified by trial counsel. You know, I don't, Your Honors, have prepared for me a list of specific calls and their statements that are particularly problematic. But I will say, you know, even looking at the most problematic category here, which is the category of statements made by unidentified people who are alleged co-conspirators, I mean, that is very troubling, right? There are times in which unidentified statements come in, right? You know, my adversary cited cases in which unidentified co-conspirator calls come in. But those calls come in in the context of the other evidence. And this is a case where doing that is very dangerous, right? Let's look at the other evidence. The other evidence that the district court had was the defendant's statements on these recordings, which are not hearsay. They are admissible as party admissions. So now, as you conceded, you can look at the hearsay statements as part of the admissibility question. But now you look at them together with the defendant's statements, which are not hearsay. Yes. And it's very difficult to read them together and not see that this is discussion of illicit activity, especially when we are on clear error review and the standard is a preponderance, not proof beyond a reasonable doubt. Then you add to that that there is some surveillance of activity that would be consistent with drug trafficking. I'm hard-pressed to see how the district court committed clear error when it considered the hearsay statements together with the defendant's own statements and the surveillance evidence. What am I missing? I think that the statements are vague. I think that the government— Your client's statements are vague? I think that if what we're looking for is parties coming together in an agreement, you know, making an agreement in further of a conspiracy, they are vague. Okay. The question is whether these are co-conspirator hearsay. You're looking at this not beyond a reasonable doubt, but whether a preponderance suggests that these people are involved in a drug conspiracy together. Yes. What other inference would be drawn from your client's statements together with these other statements than that they were involved in some illicit transaction? You could make the inference that they were having drug-related conversations that weren't in furtherance of a conspiracy. You could make the inference— They were having just idle drug conversations? That this is a buyer-seller relation, that this is a prospective arrangement between these parties. Well, I know you argue that, but that's not persuasive once the evidence—once the tapes come in. There's ample evidence that they were involved in more than individual transactions. The tapes themselves suggest a continuing relationship, large amounts, fronting. But before the tapes come in, though, what do we have, right? No, but you said the tapes are vague and that you couldn't infer a conspiracy from them, and I'm just questioning you on that. Remember, we're looking at the tapes with a chunk of them not being hearsay, your client's own statements. And the surveillance and that—how do we identify clearer here? I mean, I think— They have all the hallmarks of drug conversations. I acknowledge that looking at these calls is difficult, right, that they're difficult to parse, that it's difficult to do what the law requires, which is you look at one side and then look at the other, right? I don't think from hearing one voice— That's not what the law—the law is not look at one side and then look at the other. The law is don't look only at the hearsay statements. Don't ignore them, but don't look only at them. And I started this line of questioning by saying to you there's surveillance and there's your client's own statements. Yes, there is surveillance, but that surveillance did not yield— It's not surveillance that showed a drug transaction. It's surveillance of a person entering a building, surveillance of a person leaving a building. It's surveillance of a person meeting someone at a casino and someone leaving that casino. In conjunction with the tape discussions at and about the relevant time. Yes, and I—I mean, to go on to sufficiency of the evidence as a whole, I do think even when you admit those calls that we have a sufficiency problem of the evidence here, right? I mean, I don't—you know, the government argued that my client went into Sullivan's residence with a backpack and left without it and then went to Butler's store with a plastic bag that he also left, right? These are the items that were left at any place in this entire two-year conspiracy were two bags. Two bags that were—there was no seizures at any time contemporaneously to the leaving of these bags. I mean, I could go to someone's house and leave my lunch and leave without the bag I carried it in. I mean, there was nothing to determine that these bags were drugs, money. We don't know what was in these bags, and there's no corroboration of what was in these bags. Wasn't there a call—and I don't have the transcripts right in front of me—relative to Butler visit shop. Wasn't there sort of a call like that suggested I'm waiting for a delivery, my people are getting anxious, I'm coming, I'm nearby, at least tying the discussion that seemed drug-related and the prospect of delivery to the arrival and the going in? Am I misremembering that? There are calls—yes, there are calls surrounding the meetup at Mohegan Sun, and there's calls—you know, let's meet up, we're meeting up. There's calls surrounding the meetup at the store and at Butler's residence, right? But I don't think—even if you look at the substance of those calls, I don't think it's enough to determine that that's what happened. I mean, we have surveillance over two years. These are two singular meetings. The amount of drugs, the type of conspiracy alleged here, even the amount of drugs that the court found isn't supported by these two meetings without any corroboration beyond these phone calls. Thank you. Good morning, and may it please the court. Connor Reardon for the United States. Mr. Swinton makes four arguments on appeal, two challenging his convictions and two challenging his sentence. This court should reject all of them and affirm. Mr. Swinton's challenges to his convictions raise largely overlapping issues, many of which have been covered already. Both of the challenges fail for three basic reasons, all three of which Judge Raggio identified in your questioning. The first is that the government introduced significant evidence outside the wiretap recordings corroborating Mr. Swinton's participation in drug trafficking. The second is that Mr. Swinton's own statements on the wiretap recordings are admissible non-hearsay and compelling evidence of guilt. The third is that the statements of the other parties on the wiretap recordings, considered in light of the whole record as they must be, were plainly made by Mr. Swinton's co-conspirators during and in furtherance of the conspiracy. Those three things being the case. The case, I mean, obviously we are able to consider the statements themselves, but you said something, I think you said that even outside of the calls there's significant evidence. Is it really the case that if we are not considering the calls at all, which again we are allowed to do, that the non-statement evidence in your view is significant? Sure, Your Honor. I think that when I say that the evidence outside of the calls is significant, I mean that the government introduced substantial evidence that considered alongside the calls becomes quite probative in its own right. To the admissibility of the calls. To the admissibility of the calls. You're not suggesting that if the calls had not been admitted, do you want to argue sufficiency without admission of the calls? No. So when you say there's substantial other evidence, you mean supporting admission of the calls, not necessarily by itself supporting guilt. Precisely so, Your Honor. I'm not here to argue that had law enforcement simply surveilled Mr. Swinton doing everything that he did on October 7th and December 8th, 2018, without the corresponding phone calls shedding light on the meaning of those observed behaviors, that we could have or would have attempted to obtain a criminal conviction. The point is that that evidence, considered alongside the calls as it must be in this calculus, becomes quite probative when it is paired with the intercepted recordings. Now, Judge Robinson, for example, you asked about communications between Mr. Swinton and Mr. Butler on December 8th. I refer you to the conversation starting at 561 in the appellant's appendix, in which Mr. Butler is referring to having four of them still left. He says explicitly, it's grams out here, bro, referring to the sort of pace of product sales. Now, these are, contrary to the arguments that Mr. Swinton has made, not vague statements, particularly when all of the statements in the 66 calls are considered together. And so, based on those three buckets of evidence, evidence outside the wiretap recordings, Mr. Swinton's own statements on the wiretap recordings, and then the statements by third parties on those recordings, the district court, after scrutinizing these statements with a very high degree of care, properly admitted them, and then all of these categories of evidence taken together, very comfortably support Mr. Swinton's convictions. So, let me add, because we're sort of lumping the convictions together, all right? And so, I sort of understand the conspiracy conviction, because a lot of the arguments about the admissibility sort of carry over to the sufficiency. For the possession with intent to distribute, am I right in understanding that we have to, the pieces of evidence we have are that we believe him to be engaged in a conspiracy that involves distribution of drugs. And we see him enter premises with a bag and exit without a bag. And so, we are inferring, or we say a jury can infer beyond a reasonable doubt, that the contents of that bag that he left were illicit drugs. Well, I think that it goes beyond that, Your Honor, because we have, most important, I think, wiretap recordings that correspond to those visits. Which visit do you think drives it? Does either of those visits drive the possession with intent to distribute, or is one of them the one that you're focused on more, the Sullivan's or the Shower's or the Butler's? Frankly, Your Honor, if I had to choose between them, I think I would say that the evidence is probably somewhat stronger with respect to the trip to Butler's, and I'll explain why. So, one, the conversation with Sullivan that preceded the trip to Sullivan's apartment was really in the way of logistical arrangements, something like I'll be there shortly, right? No explicit discussion of contemplated transaction or anything like that. But I'm at 561 in the appellant's appendix. This is a call on December 8th, 2018, between Mr. Swinton and Mr. Butler. Mr. Butler says, still got four of them left. Mr. Swinton responds, so you still ain't never moved. Mr. Butler says a few lines down, I talked to him anyway. I'm here right now. It's grams out here, bro. They go back and forth a little bit more, and then Mr. Swinton says, I'll hit you up when I get up. That way there's a later call where Mr. Swinton and Mr. Butler arranged to meet at the studio. If I am not mistaken, and I apologize if I am, there are a number of calls here. Mr. Swinton says, I'm going to come get the cash at the studio. So we have Mr. Swinton and Mr. Butler clearly talking about a transaction in something. That is a something that can be measured in grams. The transaction that the government charged took place at Hat Boys below Mr. Butler's residence. Cocaine was seized from both the residence and from Hat Boys. There was also a controlled purchase of crack cocaine that occurred at that location. That was one of the seven that were made from Mr. Butler during the time frame of the conspiracy. And so while Mr. Swinton in making his arguments has, I think, understandably tried to disaggregate the component parts of the government's case and said, well, look, you could walk into some place with a bag. I could walk into some place with a bag and maybe it's my lunch. Well, if you look at the bag and the trip inside by itself, sure, but not if you look at it in the context of the properly admitted phone calls and the overwhelming evidence of an ongoing narcotics conspiracy during this time frame. Am I right in understanding that your argument as developed in your brief is to start with that there are controlled purchases of cocaine from Butler? So we know that Butler is a drug supplier. And it's in that context that we then look at the recorded conversations. And then it's in the context of Butler being a drug supplier, the recorded conversations about, you know, on what day, bear with me, the October 7th is, you know, you got two, I'm grabbing the chicken at my shop now. You've got Butler saying that those are all drug conversations. And then it's in that context that you start considering people going in and out of apartments with bags or backpacks and either leaving them at locations or then going back to the Hat Boys, which is the place where drugs are either purchased or seized. That's the evidence. Is that right, to support this? That's exactly right. All right. So it's not just going in and out with a bag. It's who's going in and out, who's had conversations about it, and where they ultimately wind up. Precisely so, Your Honor. The argument on the other side largely relies in this respect on breaking the government's case apart and then saying as to each individual piece, well, if we look at this with blinders on, what does it really show? But that's not what a jury's job is, and it's certainly not what this court's job is on sufficiency review. I'm happy to take any other questions from the court. If not, we'll rest on the briefs. I have a question that wasn't argued by your adversary, but can you explain to me how the question of the prior conviction winds up given to the jury? I mean, I would have thought the government would have argued for that not being submitted the way it is. I know you're arguing that it's basically harmless error, but where would it end up happening? Sure, Your Honor. So ultimately, Mr. Swinton was convicted only of non-mandatory minimum offenses, meaning that the pertinent question under Section 851 was whether he had a prior conviction for a felony drug offense. And the definition of felony drug offense does not, unlike the definition of serious drug felony, which applies to mandatory minimum drug offenses, include this requirement that the person actually have served more than 12 months and been released within 15 years of the beginning of the commission of the charged offense. Now, the definition of serious drug offense was in play because Mr. Swinton was charged with mandatory minimum offenses. Early in the case, the district court decided on this bifurcated proceeding under which the jury would be given that question. I think as a hedge against the prospect that Almendariz-Torres' exception to the Sixth Amendment right extends only to the precise fact of a prior conviction and not to these attendant facts about the length of the sentence served and then the release date. I think that what happened, I was not on the trial below, but what I gleaned from the record is that once this bifurcated proceeding was set up, just as a matter of inertia, the parties carried through and gave it to the jury, even though given the conviction that was actually obtained, it would not have been necessary to do so. I heard that you weren't on the trial team, but you'll also understand that inertia is not an acceptable action by the government in these cases. Okay. Yes, well, certainly. I mean, you know your job is to protect the record and should have alerted the court that at that point it wasn't appropriate to send it to the jury. Well, sure. I will say, Your Honor, that I don't think that sending the question to the jury would have introduced error. I think that it sort of at worst gave Mr. Swinton something that he was not entitled to or resulted in the jury making determinations that were not necessary. But for the government's part, we don't see that as error. We see it as unnecessary and arguably a drain on resources, albeit a minor one, given that the second part of the bifurcated proceeding was really quite short and largely uncontested. Thank you, Your Honor. We'd ask the court to affirm. Thank you, Your Honors. Judge Rodger, I guess a lingering question with respect to 851 is if that was a decision for the judge to make, was it error for it to be submitted to the jury and the jury to make a finding at all, and is that even a judge finding as required by the statute? The defense effectively waived the objection prior to conviction and agreed that it was a serious drug felony. You were asked and counsel said that's right. So, I mean, I don't see how this argument helps you. I just didn't see it as necessary if the government had protected the record. Okay. I don't want to use up everybody's time. I do want to use my remaining time just addressing the sentence and our argument that the sentence was procedurally unreasonable. And I would ask, Your Honors, to look at the portions of the PSR that the judge relies on in order to reach the quantities that the court reaches and look at the underlying calls that are used to come up with those amounts. I mean, in the first instance, the court came up with the number 732 using those calls and then artificially reduced it to 499, one gram under the amount found by the jury. And that's your view on the method that the court should have been using to determine these amounts? Well, I think that what the jury, I don't think that the court should have been picking and choosing among those calls to figure out which calls it should use to rely on an amount and which calls it shouldn't have. The jury certainly didn't do that. I don't think that the jury could have arrived at the low numbers. The jury chose the lowest number it could in each instance. They weren't saying, We believe half of these calls. They weren't saying, We believe 499 grams of these calls. They were saying, These calls for us don't establish quantity. We believe that some amount of drugs is transactions, but these calls don't establish it for us. And if you look at those calls, they don't. You look at them, there's no, for the vast majority of them, there's no evidence of it. They're not tied to a meeting. There's no evidence of an agreement. There's no evidence of a transaction. They just don't support the analysis that the court brings to them. Are you arguing now sufficiency? Well, I'm just arguing in terms of the court using those numbers for the purposes of sentencing. Well, you argued that the sentence was substantively unreasonable. What you're arguing here seems to be procedural error by the district court. But you don't argue this. I mean, you argue it's procedurally unreasonable because you considered acquitted conduct. Yeah. But is that. But that is in essence part of the same argument. Okay. You know, which is that the jury rejected those calls. The jury rejected those calls and the judge used those calls. And it was procedural error to consider acquitted conduct, but it was also procedural error. What's your case for its procedural error to consider acquitted conduct? Well, the judge had decided that he would. I thought it's, in fact, the case that the court can consider uncharged conduct, acquitted conduct, but it has to find it by a person. You're correct, Your Honor. And the Supreme Court has indicated that they're displeased with that, but the current state of the law does not, you know, you're correct on the current state of the law. But what the judge is also doing there, and I do argue this in my brief and in my reply brief, is coming up with a guidelines range based on these numbers that's not supported by a preponderance of the evidence. The judge is using these calls to come up with this artificial calculation to put my client in offense level 24. And it's from the offense level 24 that he arrives at the guidelines of 100 to 125 months. You know, so what I would ask Your Honor to do is to look at these, you know, so I argue both that it is acquitted conduct, which the court said it would not do. Can you help me understand? I'm trying to understand. I understand there's not enough evidence to support the number the court used argument, but acquitted conduct I'm struggling with a little bit. The jury convicted. The jury checked the box that says it's not above 499 or whatever the number was, and the court lowered its number to say that it wasn't a greater quantity than the jury had found. What's acquitted about what the court found as opposed to just not supported by the evidence? The argument is really just that the jury could not have found that. Our argument is essentially the jury rejected those calls because there's no way to reach those numbers without looking at those calls, and there's no way the jury credited those calls in coming up with less than 500, right? The calls to the jury did not mean what the government argued they meant. Right, but acquitted is more of a term of art. I just want to understand really what it is. The evidence, as we believe the jury interpreted it, doesn't get you far. Yes, that's a better way to phrase it, Your Honor. The government walks us through, at pages 59 through 61 of its brief, the quantities of drugs and where they're proved in the phone calls. This is basically a sufficiency challenge to the court's findings, so you have to be able to say that these facts could not permit any judge to find this by a preponderance of the evidence. Tell me which one you think doesn't support it. I mean, the judge himself considered this calculation conservative and declined to attribute additional quantities that the government urged and that the probation department recommended. Yes, Your Honors. I mean, these are calls in which, like the first call where the judge- This is the 100 grams that's- Yeah, that happened at some point in the past based on the conversations they were having that Butler tells him, I can do 100, right? He's capable of doing 100. He's speaking prospectively about something he says he's able to do, and the judge assigns 100 grams for something that happened before that moment. Right, but that's not all it says. It then explains that the trial evidence showed that Swinton generally met with Butler to sell 100 grams or more of cocaine and referenced in the calls the pricing of 100-gram quantities. At that point, there's no surveilled meeting, though, between these two parties, right? This investigation hasn't had these parties meet, right? They meet for the first time after that conversation. So the idea that prospectively, you know, that this 100-gram transaction took place before is unsupported in the record. You know, they have another call, you know, I gave my cousin, you know, half, I give you half, right? And that's used to support 500-gram transaction that there's no evidence ever took place that this call had anything to do with an actual transaction and wasn't just a conversation that these two men were having about quantities. And then arrests, you know, the arrests happened shortly thereafter with no further meetings between the parties. So these are quantities that are being discussed, but they're not tied, in the most case, to any agreement, meeting, or transaction. Okay, all right. Thank you, Ms. Gunther. I think we have your argument. Thank you both. We will take the case under advisory. Thank you.